Terrance P. O'NEILL, Plaintiff,

v.

Marvin RUNYON, Postmaster General, Defendant.

No. 93–B–2131.

United States District Court, D. Colorado.

Sept. 27, 1995.

Richard C. LaFond, Arnold M. Woods, Law Offices of Richard LaFond, Denver, CO, for Plaintiff.

Henry L. Solano, United States Attorney, George E. Gill, Assistant U.S. Attorney, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In this Title VII employment discrimination action, defendant, Marvin Runyon, Postmaster General, (Postmaster) moves for partial summary judgment on plaintiff Terrance P. O'Neill's (O'Neill) claim for front pay or reinstatement under the doctrine of after-acquired evidence of misconduct. The Postmaster also moves for partial summary judgment on Runyon's claim for compensatory damages and jury trial request based on the effective date of the Civil Rights Act of 1991. After consideration of the motion, briefs, and oral argument, I grant the motion in part and deny it in part.

### I.

There is no genuine dispute about the following facts. In 1983, O'Neill was hired by the United States Postal Service (USPS) as a clerk. O'Neill received several promotions during the years culminating in his promotion in 1987 to supervisor at the Denver Processing & Distribution Center. O'Neill held this position until he was terminated in July, 1992. O'Neill alleges that the USPS retaliated against him repeatedly from 1989 until he was fired in 1992. Specifically, O'Neill alleges the following retaliatory conduct:

a. a demand that O'Neill reverse his decision in a grievance matter in November 1989, which plaintiff refused to do;

b. a Letter of Warning issued in December 1989 in reprisal for the grievance matter;

c. anger (including threats of termination) against plaintiff for participating in a matter being conducted by the Justice Department in December 1989;

d. an "unacceptable" performance evaluation in August 1990 as reprisal for O'Neill's participation in a USPS investigation of civil rights violations in February 1990;

e. refusal of USPS management to change the "unacceptable" evaluation and further threats regarding O'Neill's future in the USPS in August 1990;

f. several more Letters of Warning issued on or before August 1991;

g. an "unacceptable" performance evaluation in August 1991;

h. pressure against plaintiff to disregard allegations of sexual harassment in October 1991;

i. placement on administrative leave in March 1992; and

j. termination in July 1992.

(Complaint ¶¶ 12–50); (Def.Brief p. 4)

Plaintiff was terminated effective July 24, 1992, the last date for which he received compensation from the USPS. On October 12, 1993, O'Neill filed this action alleging defendant had retaliated against O'Neill in violation of Title VII, 42 U.S.C. § 2000e–3. Plaintiff seeks actual damages, compensatory

damages, attorney fees and costs and a jury trial.

Defendant moves for partial summary judgment on the issue of the scope of relief available to O'Neill based on 1) the doctrine of "after acquired evidence of misconduct" and, 2) the date of enactment of the Civil Rights Act of 1991 (Act). I will grant the motion as to compensatory damages and a jury trial based on the Civil Rights Act of 1991, for conduct occurring before November 21, 1991. I will deny it as to the "after acquired evidence" doctrine.

## II.

Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir.1980); FED. R.CIV.P. 56(e).

Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence present in the motion and response. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson Liberty Lobby, Inc.*, 477 U.S. at 252, 106 S.Ct. at 2512; *Mares*, 971 F.2d at 494.

## III.

### A. Civil Rights Act of 1991

Plaintiff seeks compensatory damages and a jury trial on his discrimination claim pursuant to the Civil Rights Act of 1991. Defendants argue that the damages and jury trial provisions of the Civil Rights Act of 1991 do not apply to cases such as this, filed after the Act passed and based on conduct which occurred prior to the Act. I agree.

In *Landgraf v. USI Film Products*, — U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court held that absent a clear expression of congressional intent to the contrary, a federal statute enacted after the occurrence of the conduct at issue should not be applied if it would increase a party's liability for past conduct. Specifically, in light of *Landgraf*, the recovery of compensatory and punitive damages under the Civil Rights Act of 1991 does not apply retroactively. *Carter v. Sedgwick County, Kan.*, 36 F.3d 952, 955 (10th Cir. 1994). Further, a jury trial is available only if plaintiff seeks compensatory or punitive damages. Thus, "the jury trial option ... stand[s] or fall[s] with the ... damages provisions." *Steinle v. Boeing Co.*, 24 F.3d 1250, 1251 (10th Cir.1994) *quoting Landgraf*, — U.S. at ——, 114 S.Ct. at 1505. Accordingly, defendant's motion for summary judgment on plaintiff's request for jury trial and for compensatory damages is granted.

**After–Acquired Evidence**

To bar relief based on after-acquired evidence, there must be proof that: "1) the employer was unaware of the misconduct when the employee was discharged; 2) the misconduct would have justified discharge; and 3) the employer would indeed have discharged the employee, had the employer known of the misconduct." *McKennon v. Nashville Banner Publishing Co.,* —— U.S. ——, ——–——, 115 S.Ct. 879, 886–87, 130 L.Ed.2d 852 (1995); *Ricky v. Mapco, Inc.,* 50 F.3d 874, 876 (10th Cir.1995). To warrant summary judgment based upon O'Neill's alleged misconduct in not revealing a misdemeanor conviction in 1973 or his "firing" from the Castle Rock and Sheridan police departments, the USPS bears the burden of demonstrating that O'Neill lied about his past and that it would not have hired O'Neill in 1983 if it had known that O'Neill had lied about these incidents. *See O'Driscoll v. Hercules, Inc.,* 12 F.3d at 179.

**B. Police Record**

When O'Neill applied for employment with the USPS he filled out an employment application on which he checked "NO" to the question "Have you ever been convicted of an offense against the law ... ?" (Def.Br.Att.1). As part of its motion for partial summary judgment, the USPS submitted to the court certified copies of court records from Potsdam, New York. These records show that O'Neill pleaded guilty in 1972 to misdemeanor criminal mischief. (Def.Reply Exh. 14). However, in August, 1995, O'Neill submitted a "Supplement to Response to Motion for Summary Judgment" with attached documents which revealed that the Potsdam, New York court vacated the conviction pursuant to an inquiry by O'Neill which the court treated as a motion for writ of *coram nobis.* (Supplement Attachment 1) The New York court granted the *coram nobis* motion and vacated the 1973 conviction. The court took these actions because Mr. O'Neill "appear[ed] to have entered a plea not realizing its full impact." (Supplement Attachment 1).

USPS also points to the following notice located immediately above O'Neill's signature on his application as evidence of his knowledge of his obligation to be truthful:

**ATTENTION**

**BEFORE SIGNING THIS FORM CAREFULLY READ THE PARAGRAPHS BELOW**

\*    \*    \*    \*    \*    \*

A false or dishonest answer to any question in this Statement may be grounds for not employing you or for dismissing you after you begin work, and may be punishable by fine or imprisonment. (*U.S.Code, Title 18, Sec. 1001* ). All the information you give will be considered in reviewing your Statement and is subject to investigation.

(Def.Exh. 1)

Moreover, directly to the left of his O'Neill's signature on the application is a box containing the following statement:

**CERTIFICATION**

I certify that all of the statements made in this application are true, complete, and correct to the best of my knowledge and belief and are made in good faith.

*Id.*

As stated above, under the "after-acquired evidence" doctrine USPS carries the burden of showing that Mr. O'Neill lied about his prior convictions. Particularly, the question in this case is whether, when Mr. O'Neill filled out the USPS employment application, he lied about having no criminal convictions. Thus, Mr. O'Neill's belief about the criminal proceedings in New York in 1973 is relevant.

A writ of *coram nobis* is an "extraordinary form of relief" which, when granted, allows a court to vacate one of its convictions long after the time of conviction. *See Carter v. Attorney General of the United States,* 782 F.2d 138, 141 (10th Cir.1986). A court should grant the writ "only under circumstances compelling such action to achieve justice." *United States v. Morgan,* 346 U.S. 502, 511, 74 S.Ct. 247, 252, 98 L.Ed. 248 (1954); *see also Carter,* 782 F.2d 138; *Casias v. United States,* 421 F.2d 1233, 1234 (10th

Cir.1970). *See generally* 3 C. Wright, *Federal Practice & Procedure* § 592 (1982).

■ The New York court granted O'Neill's *coram nobis* motion and vacated his conviction because O'Neill did not understand the consequences of his plea in 1973. This rationale is indistinguishable from O'Neill's assertions in this case. I give full faith and credit to the acts, records, proceedings, and judgment of the New York sister court. Full Faith and Credit Clause of Art. IV, § 1, United States Constitution; *see Allstate Ins. Co. v. Hague,* 449 U.S. 302, 308 nn. 10–11, 101 S.Ct. 633, 638 nn. 10–11, 66 L.Ed.2d 521 (1981). Under these uncommon circumstances, I conclude that the USPS has failed to meet its summary judgment burden to show that no genuine issue of fact exists whether Mr. O'Neill lied on his job application.

C. Termination of Previous Employment

Defendant also moves for summary judgment on "after acquired" evidence of misconduct based on O'Neill's statements on his employment application that he had not been terminated from any job within the previous five years or that he quit a job after being notified that he would be fired. (Def.Motion Exh. 1). Defendant also alleges that O'Neill misidentified the reason he left these two former jobs. For a position O'Neill held with the Douglas County Sheriff's Department (DCSD), he listed "new administration" as his reason for leaving. For a position with the City of Englewood Police Department (EPD), O'Neill listed "job offer with Sheridan police" as his reason for leaving. The USPS states that plaintiff, in fact, was fired from these two jobs.

■ O'Neill submits an unopposed affidavit which states that in 1978 O'Neill was working as a patrolman with the EPD. O'Neill states that during his probationary period he worked off duty without prior official approval. He was told by the Chief of Police that he would have to go before the Disciplinary Review Board. The Chief also told O'Neill he expected the Board to recommend termination. In the meantime, O'Neill received a job offer from the Sheridan Police Department. O'Neill submitted his resigna-

tion from the EPD to go to work in Sheridan before the EPD made any decision to fire him. (Pltf.Exh. ¶ 41–52). Also, O'Neill's USPS employment application is dated June 29, 1983. (Def.Exh. 1). O'Neill stated in the employment application that he ended his employment with the EPD in May, 1978. (Def.Exh. 1). Clearly, more than five years elapsed between O'Neill's leaving the EPD and his application for employment with the USPS. Thus, a genuine issue of fact remains whether O'Neill answered truthfully the question about whether he had been fired from this job within the last five years.

As to the alleged misidentification of the reason for his leaving his job with the EPD and the CRPD, O'Neill submits an unopposed affidavit with explanations for his answers on the USPS employment application. In response, defendant states "the information on the background of the referenced departments cannot be collected at this time to meet the deadline of this reply." Consequently, defendant has not met its burden to show that O'Neill was fired from his previous employment and knowingly misrepresented this on his job application. Under these circumstances, there remains a question of material fact as to whether O'Neill committed any misconduct on this basis. Accordingly, it is ORDERED that:

1. defendant's motion for summary judgment based on after acquired evidence is DENIED;

2. defendant's motion for summary judgment precluding a jury trial and compensatory damages for conduct occurring before November 21, 1991 is GRANTED.