**Claudette CARR and Charles A. Dearborn, Plaintiffs,**

v.

**WOODBURY COUNTY JUVENILE DETENTION CENTER and Woodbury County, A Municipality and Governmental Agency, Defendants.**

**No. C 93–4038.**

United States District Court, N.D. Iowa, Western Division.

Nov. 23, 1995.

Patricia Wengert of Smith, McElwain & Wengert, Sioux City, Iowa, for Claudette Carr.

Douglas L. Phillips of Klass, Hanks, Stoos, Stoik & Villone, Sioux City, Iowa, for defendant Woodbury County.

## MEMORANDUM OPINION REGARDING PLAINTIFF CARR'S MOTION IN LIMINE

BENNETT, District Judge.

## TABLE OF CONTENTS

I. BACKGROUND AND MOTION ........................................ 620

II. LEGAL ANALYSIS................................................ 621
    A. The McKennon Decision ..................................... 622
    B. Applicability Of McKennon.................................. 626
        1. Decisions of other courts on "after after-acquired evidence" ........... 626
        2. McKennon's applicability here ................................. 627
            a. "After after-acquired evidence" is outside the scope of McKennon..... 627
            b. McKennon's prerequisite has not been met ....................... 629
    C. Relevance and Balance Of Probative Value And Unfair Prejudice .......... 630

IV. CONCLUSION ................................................. 630

In a recent ruling, *McKennon v. Nashville Banner Pub. Co.*, —— U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), the Supreme Court established the boundaries for the relevance and admissibility in an employment discrimination case of "after-acquired evidence." That is, evidence of a plaintiff employee's wrong-doing, which occurred during employment but remained unknown to the defendant employer until after the adverse employment decision had been made. However, this case requires this court to explore the "after-*McKennon*" new frontier of the admissibility of "after after-acquired evidence," that is, evidence of wrong-doing by a former employee that occurs after his or her employment had terminated. This matter comes before the court pursuant to a motion *in limine* filed October 25, 1995, by plaintiff seeking to preclude evidence of post-employment use of marijuana discovered by the employer during preparation for trial of this matter. On November 11, 1995, this court entered an order granting this motion *in limine*, so as to afford counsel for the parties sufficient time to prepare for trial in light of the ruling. This matter then proceeded to trial beginning November 20, 1995. However, the November 11, 1995, order disposing of the motion before trial also stated that, owing to the complexity of the issues raised in this motion *in limine*, a written memorandum opinion would follow. This memorandum opinion fulfills that promise.

### I. BACKGROUND AND MOTION

In the Order On Final Pretrial Conference, filed November 6, 1995, the parties stipulated, *inter alia*, to the following facts.

Plaintiff Claudette Carr was employed by Woodbury County as a Youth Worker in the County's Juvenile Detention Center. She was a part-time employee from November 16, 1990, to April 13, 1992, and, at the time of her termination, she was paid $7.13 per hour.

The complaint in this matter asserts that Carr was constructively discharged as the result of a racially and sexually hostile work environment and as the result of retaliation by the County for engaging in protected free speech. The County contends that Carr voluntarily resigned her position and that there are no facts from which an inference of discrimination based on race or sex can be drawn.

On October 25, 1995, Carr moved *in limine* to preclude evidence of any "past or recent drug and alcohol use" by Carr. Carr asserts that during discovery, defendants obtained evidence of a single positive urine analysis (UA) for marijuana use *after* Carr left her employment at the Juvenile Detention Center. Carr asserts that any relevance of a single positive UA for marijuana use after employment had terminated is outweighed by the potential for unfair prejudice, and that raising the issue is intended to intimidate and harass Carr as well as to prejudice her case with the jury.

Defendant Woodbury County resisted the motion on November 1, 1995. The County contends that Carr has mischaracterized the extent of the evidence of marijuana use. The County points to medical records, besides the single positive UA, that indicate Carr admitted to using marijuana as much as three to four times a month. The County appended to its resistance copies of the documents evidencing Carr's marijuana use. Such evidence, the County contends, indicates that Carr is unfit for employment as a youth worker at a juvenile detention center. The County quotes one of its policies, which states that "Any employee found guilty of indulgence in a controlled substance without seeking treatment will be discharged." Fur-

thermore, the County cites the recent Supreme Court decision in *McKennon v. Nashville Banner Pub. Co.,* —— U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), as holding that such "after-acquired" evidence of misconduct, sufficient to constitute grounds for dismissal, is admissible on questions of damages. Finally, they argue that even if *McKennon* is not dispositive, the evidence of drug use is admissible as a factor in any analysis of whether Carr is entitled to future damages, because such evidence demonstrates that Carr could not have maintained a successful career in juvenile detention for her entire adult life.

Carr counters the arguments based on *McKennon* on the ground that the evidence here is "after after-acquired" evidence of misconduct, because it involves evidence of events that occurred only *after* she had already been discharged, not evidence of misconduct during her employment only discovered after her employment had ended. Therefore, she argues that *McKennon* provides no basis for admission of the evidence of marijuana use.

At a final pre-trial conference on November 3, 1995, at which plaintiff Claudette Carr was represented by counsel Patricia Wengert of Smith, McElwain & Wengert in Sioux City, Iowa, and defendant was represented by counsel Douglas L. Phillips of Klass, Hanks, Stoos, Stoik & Villone, also in Sioux City, Iowa, the parties agreed to disposition of this motion on the basis of the written motion and arguments. The court therefore turns to its analysis of Carr's motion *in limine*.

## II. LEGAL ANALYSIS

The issue of the admissibility of Carr's alleged use of marijuana, which the County discovered only in the course of discovery in this litigation, is not a simple one. Analysis of this issue, touching on the admissibility and effect of "after-acquired evidence," [1] be-

---

1. The Fourth Circuit Court of Appeals suggests that such cases are properly called "after-acquired motive" cases rather than "after-acquired evidence" cases. *Russell v. Microdyne Corp.,* 65 F.3d 1229, 1237 (4th Cir.1995). This is so, because

[i]n such cases, the employer does not assert that it had in its mind a legitimate non-discriminatory reason that explains its challenged

gins with the Supreme Court's decision in *McKennon v. Nashville Banner Pub. Co.*, — U.S. —, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). This court concludes, however, that it does not end there.

### A. The McKennon Decision

In *McKennon*, the Court granted certiorari

> to resolve conflicting views among the Courts of Appeals on the question of whether all relief must be denied when an employee has been discharged in violation of the ADEA [Age Discrimination in Employment Act] and the employer later discovers some wrongful conduct that would have led to discharge if it had been discovered earlier.

> action and that would insulate it, to whatever extent, as in the mixed-motive case; instead, the employer argues that it has acquired evidence since the time of that action that, had it known it at the time, would have led it to do exactly what it did, except for a legitimate reason rather than an illegal one. Thus, unlike the other two styles of cases [single-motive and mixed-motive], there is no dispute as to the motivating force behind the decision as made; instead, the employer attempts to demonstrate that there was what can only be called a "constructive motive" for the decision that should insulate its action from attack.

*Id.* Although this court agrees that such cases are accurately described as "after-acquired motive" or "constructive motive" cases, the circumstance described by the Fourth Circuit Court of Appeals, in which "there is no dispute as to the motivating force behind the decision made," obtains only where the after-acquired evidence provides the only possible legitimate basis for the employer's decision. However, an employer may proffer legitimate bases known to it at the time of its decision as well as a basis provided by the after-acquired evidence. In such a case, the employer's motivation at the time it made its decision is still in dispute.

2. The split among the circuit courts of appeals identified by the Court involved the following cases: *Compare Welch v. Liberty Machine Works, Inc.*, 23 F.3d 1403 (8th Cir.1994); *O'Driscoll v. Hercules, Inc.*, 12 F.3d 176 (10th Cir.1994), *later vacated*, — U.S. —, 115 S.Ct. 1086, 130 L.Ed.2d 1056 (1995); *McKennon v. Nashville Banner Pub. Co.*, 9 F.3d 539 (6th Cir.1993); *Washington v. Lake County*, 969 F.2d 250 (7th Cir.1992); *Johnson v. Honeywell Information Sys., Inc.*, 955 F.2d 409 (6th Cir.1992); *Summers v. State Farm Mut. Ins. Co.*, 864 F.2d 700 (10th Cir.1988); *Smallwood v. United Air Lines, Inc.*, 728 F.2d 614 (4th Cir.), *cert. denied*, 469 U.S.

*McKennon*, — U.S. at —, 115 S.Ct. at 885.[2] In *McKennon*, the Court rejected the line of cases holding that after-acquired evidence of misconduct acts as a complete bar to recovery in an ADEA action, concluding that it affects only the amount of damages an employee may recover. *Id.* at —, 115 S.Ct. at 887; *Ricky v. Mapco, Inc.*, 50 F.3d 874, 876 (10th Cir.1995); *Manard v. Fort Howard Corp.*, 47 F.3d 1067, 1067 (10th Cir. 1995) (*McKennon* "largely rejected" the line of cases holding that after-acquired evidence of employee misconduct barred recovery in discrimination cases). Thus, the Court determined that "after-acquired evidence" of misconduct during employment is relevant in a discrimination case as follows:

> In determining appropriate remedial action, the employee's wrongdoing becomes

832, 105 S.Ct. 120, 83 L.Ed.2d 62 (1984); *with Mardell v. Harleysville Life Ins. Co.*, 31 F.3d 1221 (3d Cir.1994), *later vacated*, — U.S. —, 115 S.Ct. 1397, 131 L.Ed.2d 286 (1995); *Kristufek v. Hussmann Foodservice Co., Toastmaster Div.*, 985 F.2d 364 (7th Cir.1993); *Wallace v. Dunn Constr. Co.*, 968 F.2d 1174 (11th Cir.1992), *vacated pending reh'g en banc*, 32 F.3d 1489 (1994). The Fourth Circuit Court of Appeals explained the split as follows:

> Some circuits held that an after-acquired motive for an otherwise discriminatory action provided a complete defense, precluding a plaintiff from establishing likability or obtaining relief for the employer's conduct in violation of the law. *See, e.g., Summers*, 864 F.2d at 708. Others held that such after-acquired evidence of employee wrongdoing should only concern the remedies available to the employee once liability was established, and that it should not be admissible unless the employer demonstrated that it would have discovered the evidence in the absence of the discrimination litigation, because, otherwise, the employer would benefit from its discriminatory conduct. *E.g., Wallace*, 968 F.2d at 1181–84.

*Russell v. Microdyne Corp.*, 65 F.3d 1229, 1238 (4th Cir.1995). In the Eighth Circuit Court of Appeals decision identified by the Supreme Court, *Welch*, the court of appeals held that "[i]n the [job] application fraud context ... we find that after-acquired evidence of employee misrepresentation bars recovery for an unlawful discharge, if the employer establishes that it would not have hired the employee had it known of the misrepresentation." *Welch*, 23 F.3d at 1405. That case, therefore, is overruled by the Supreme Court's decision in *McKennon. See McKennon*, — U.S. at —, 115 S.Ct. at 883 (overruling cases in the line to which the *Welch* decision belongs).

relevant not to punish the employee, or out of concern "for the relative moral worth of the parties," *Perma Mufflers v. International Parts Corp.*, [392 U.S. 134,] 139, 88 S.Ct. [1981,] 1984 [20 L.Ed.2d 982] [ (1968) ], but to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing.

*Id.*, —— U.S. at ——, 115 S.Ct. at 886. However, the court refrained from stating a black letter rule on when such evidence would bar the plaintiff employee from any remedial relief:

> The proper boundaries of remedial relief in the general class of cases where, after termination, it is discovered that the employee engaged in wrongdoing must be addressed by the judicial system in the ordinary course of further decisions, for the factual permutations and the equitable considerations they raise will vary from case to case. We conclude that here, and as a general rule in cases of this type, neither reinstatement nor front pay is an appropriate remedy. It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds.

*Id.*;[3] *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1238 (4th Cir.1995) ("The 'general rule'

[under *McKennon* ] . . . is that 'neither reinstatement nor front pay is an appropriate remedy,'" citing *McKennon*, —— U.S. at ——–——, 115 S.Ct. at 886–87); *Wallace v. Dunn Constr. Co., Inc.*, 62 F.3d 374, 378 (11th Cir.1995) (stating as rule without limitation that reinstatement and front pay are not appropriate remedies under the circumstances discussed in *McKennon* ).

The Court had more difficulty with the question of whether after-acquired evidence of wrongdoing barred backpay awards. *Id.* Nonetheless, the court also developed a general rule for such awards in after-acquired evidence cases:

> The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered. In determining the appropriate relief, the court can consider taking into further account extraordinary equitable circumstances that affect the legitimate interests of either party. An absolute rule barring any recovery of backpay, however, would undermine the ADEA's objective of forcing employers to consider and examine their motivations, and of penalizing them for employment decisions that spring from age discrimination.

It seems appropriate that there should be a similarity between the relief in "after-acquired evidence" cases, in which there is a general bar on reinstatement and future damages where the defendant proves that it would have terminated the employee had it known of the misconduct, and "mixed-motive" cases, in which there is a complete bar on damages where the respondent proves that it would have made the same decision absent a discriminatory motive. In each kind of case, there is a mixture of legitimate and illegitimate grounds for dismissal. The difference between the relief available in the two kinds of cases is also appropriate, allowing equitable factors to overcome the "general rule" in "after-acquired evidence" cases, but not providing for such adjustment in mixed-motive cases. In an "after-acquired evidence" case, the employer should not be able to raise the after-acquired evidence as an absolute bar to damages relief, because the employer concededly did not know about the legitimate ground for dismissal, whereas in a "mixed motive" case, the employer did.

---

**3.** Although the Court did not say so in *McKennon*, its rule regarding damages in "after-acquired evidence" cases is similar to statutory provisions limiting damages in "mixed-motive" cases. Section 2000e–5(g) of Title 42, which pertains to damages in "mixed-motive" cases under § 2000e–2(m), was amended in 1991, Pub.L. 102–166, § 107(b), to provide as follows:

(B) On a claim in which an individual proves a violation under section 2000e–2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) of this title; and

(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

*Id.; see also Russell,* 65 F.3d at 1238 (quoting *McKennon* for this calculation of backpay awards under these circumstances); *Mardell v. Harleysville Life Ins. Co.,* 65 F.3d 1072, 1073 (3d Cir.1995) ("*McKennon* ... decided that, absent extraordinary circumstances, backpay runs only until the date that the employer discovered the conduct for which it would have fired the employee."); *Wallace,* 62 F.3d at 378 (extraordinary equitable circumstances must be taken into account in deciding extent to which backpay award is available under *McKennon* ). Courts have thus far declined to define with any specificity what might constitute "extraordinary equitable circumstances" affecting the award of backpay. *McKennon,* —— U.S. at ——, 115 S.Ct. at 886; *but see Wehr v. Ryan's Family Steak Houses, Inc.,* 49 F.3d 1150, 1154 (6th Cir.1995) (emphasizing *McKennon's* directive that equitable circumstances be considered, and directing the district court to take heed of the fact that *McKennon* stated that " '[i]t would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated ... in any event and upon lawful grounds,' " quoting *McKennon,* —— U.S. at ——, 115 S.Ct. at 886). However, one circuit court of appeals reads *McKennon* as providing for the consideration of both on- and off-the-job misconduct as "wrongdoing" that should be weighed under *McKennon* to determine whether those "extraordinary equitable circumstances" are present. *See, e.g., Mardell,* 65 F.3d at 1074 n. 4 ("wrongdoing" in *McKennon* does not distinguish between on- and off-the-job misconduct, such as fraud in employment applications).

Although in *McKennon* the Court determined that the availability of remedies in after-acquired evidence cases had to be determined on a case-by-case basis, *McKennon,* —— U.S. at ——, 115 S.Ct. at 886, the court did state one black letter rule in its opinion. That rule is that where an employer seeks to rely upon after-acquired evidence of wrongdoing by the employee during his or her employment, the employer "must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.* at —— — ——, 115 S.Ct. at 886–87; *see also Mardell,* 65 F.3d at 1073–74 ("In particular, if [defendant] proves that it would have terminated the plaintiff's employment for the reason revealed by the after-acquired evidence, ... backpay should run from the discharge to the time that the wrongdoing was discovered...."). Other courts since *McKennon* was decided have readily applied its "would have terminated" or "would have fired" standard in comparable situations, including ones in which the alleged misconduct occurred in the job application process. *See, e.g., Mardell,* 65 F.3d at 1073–74 ("would have fired" standard, rather than "would not have hired" standard, applies to after-acquired evidence of job application fraud in discriminatory discharge case, citing *Shattuck v. Kinetic Concepts, Inc.,* 49 F.3d 1106, 1108–09 (5th Cir.1995), and *Wehr v. Ryan's Family Steak Houses, Inc.,* 49 F.3d 1150, 1154 n. 5 (6th Cir.1995)); *Wallace v. Dunn Constr. Co., Inc.,* 62 F.3d 374, 379 (11th Cir.1995) (applying "would have fired" standard to case of employee discovered to have falsified her job application after she had brought discrimination claims); *Shattuck v. Kinetic Concepts, Inc.,* 49 F.3d 1106, 1108 (5th Cir.1995) ("We are persuaded that the pertinent inquiry, except in refusal-to-hire cases, is whether the employee would have been fired upon discovery of the wrongdoing.").

■ The district court trying such cases involving after-acquired evidence of asserted misconduct must decide, at least in the first instance, the question of what "type or quantum of evidence (such as a policy or custom) [the employer] must adduce to establish that it would in fact have fired [the plaintiff] upon discovering" the plaintiff's misconduct. *Mardell,* 65 F.3d at 1073 n. 3. However, where there is a genuine issue of material fact as to whether or not the employer would have terminated the employee for the misconduct in question, the district court errs in finding that the "after-acquired evidence" defense, as defined by *McKennon,* applies as a matter of law, because the employer has not proved the "would have fired" requirement for raising

the defense. *Russell,* 65 F.3d at 1240;[4] *see also McKennon,* —— U.S. at —— – ——, 115 S.Ct. at 886–87 (listing employer's lack of awareness of the misconduct at the time of discharge among requirements for invoking defense); *Ricky,* 50 F.3d at 876 (adding to "would have fired" requirement, further requirement that employer establish that "it was unaware of the allegations" of the employee's misconduct at the time it terminated the employee); *O'Neill v. Runyon,* 898 F.Supp. 777, 781 (D.Colo.1995) (listing requirements for defense drawn from *McKennon* ). Furthermore, perhaps obviously, the employer must establish that the employee's misconduct did in fact occur, as well as the fact that is was sufficiently severe that the employer would have fired the employee.

4. The Fourth Circuit Court of Appeals in *Russell* found that the defense, as limited by *McKennon,* might be applicable to an employer who, prior to the decision in *McKennon,* refrained from terminating an employee who had made discrimination charges even though after those charges were made, the employer discovered misconduct by the employee. *Russell,* 65 F.3d at 1240. The court concluded that the employer might have acted in a conservative fashion because of uncertainty about the availability of the after-acquired evidence defense. *Id.* However, the court concluded, "in post-*McKennon* cases, an employer's decision not to terminate a Title VII plaintiff would be dispositive on this issue," because the employer would not be able to meet the "would have fired" standard. *Id.*

5. Although this court has found a few federal district court decisions addressing the issues discussed by the Supreme Court in *McKennon* and by the circuit courts of appeals in the decisions cited above, fewer still offer any additional refinement of these issues. *See, e.g., Vandeventer v. Wabash Nat'l Corp.,* 887 F.Supp. 1178, 1179 (N.D.Ind.1995) (observing that in *McKennon,* "[b]asically, the Supreme Court held that neither reinstatement nor front pay is an appropriate remedy when after-acquired evidence of wrongdoing would in fact have caused dismissal for legitimate reasons; however, *backpay* would still be [ob]tainable from the date of the unlawful discharge to the date the new information was actually discovered," citing *McKennon,* —— U.S. at —— – ——, 115 S.Ct. at 886–87, and *Miller v. Bircham, Inc.,* 874 F.Supp. 337, 340 (D.Kan. 1995), and holding that *McKennon* required reconsideration of a motion for summary judgment in favor of the defendant, because the plaintiff, who committed "application falsehood," might be entitled to backpay in some amount); *Blong v. Secretary of Army,* 886 F.Supp. 1576, 1584 (D.Kan.1995) (discussing general rules presented

*Wehr,* 49 F.3d at 1154 n. 5; *O'Neill,* 898 F.Supp. at 781 (employer bears the burden of demonstrating that employee in fact engaged in the asserted misconduct not discovered until after termination).

The Supreme Court made clear in *McKennon* that its determinations on the "after-acquired evidence" issues applied with equal force in discrimination cases based on Title VII as well as in cases based on the ADEA. *McKennon,* —— U.S. at ——, 115 S.Ct. at 884; *Russell,* 65 F.3d at 1238; *Wehr,* 49 F.3d at 1153 ("[W]e are persuaded by [the language of *McKennon* ] that it applies equally to a Title VII claim."). However, that does not mean that either *McKennon* or any of its many but youthful progeny[5] controls the questions presented here.

by *McKennon,* but finding "the rules of *McKennon* will not be applied," because the plaintiff had not prevailed on her discrimination claim); *Armstrong v. United Airlines, Inc.,* 883 F.Supp. 1172, 1180 n. 9 (N.D.Ill.1995) (discussing *McKennon,* and stating that evidence of falsehoods in job application were not relevant to defendant's motion for summary judgment, because it went only to extent of remedies, not to liability for discrimination); *Blong v. Secretary of Army,* 877 F.Supp. 1494, 1503 (D.Kan.1995) (*McKennon* overruled Tenth Circuit Court of Appeals' precedent holding that after-acquired evidence of misconduct precluded employer's liability for discrimination); *Prescott v. Independent Life and Acc. Ins. Co.,* 878 F.Supp. 1545, 1552 (M.D.Ala.1995) (stating defendant's burden under *McKennon,* in terms contrary to those found in the body of the present opinion above, as proving *either* that "the plaintiff would not have been hired, or would have been terminated," and finding a genuine issue of material fact precluding summary judgment as to whether defendant could make such a showing); *Ryder v. Westinghouse Elec. Corp.,* 879 F.Supp. 534, 537 (W.D.Pa. 1995) (under *McKennon,* after-acquired evidence of employee's misconduct is irrelevant at summary judgment stage of proceedings under ADEA, because it cannot bar liability, only some damages or remedies); *McCray v. DPC Indus., Inc.,* 875 F.Supp. 384, 388–89 (E.D.Tex.1995) (defendant's motion for summary judgment on ground that after-acquired evidence of misconduct barred liability was "unavailing" under *McKennon,* and noting that *McKennon* applies equally to Title VII and ADEA cases); *Miller v. Bircham, Inc.,* 874 F.Supp. 337, 340 (D.Kan. 1995) (noting *McKennon's* abrogation of Tenth Circuit Court of Appeals rule that after-acquired evidence of misconduct bars liability under Title VII, and therefore denying employer's motion for summary judgment under that circuit's former rule); *Castle v. Bentsen,* 872 F.Supp. 1062, 1067

## B. Applicability Of McKennon

Carr contends that *McKennon* is inapplicable here, because this case involves what she aptly describes as "after after-acquired evidence" of misconduct. The evidence in question here does not involve the discovery of misconduct, either on or off the job, that occurred during Carr's employment with the County. Instead, the County seeks to introduce evidence of misconduct, marijuana use, that occurred *post-employment* with the County. The County contends that this is a difference without a distinction. The County argues that the question is still what would the County have done when it discovered that Carr was using marijuana three to four times a month. The County then asserts that, because Carr "lied" to her doctors about her marijuana use, "there is little reason to believe she would be truthful with her employer ... or would seek treatment," and therefore she could and would have been legally terminated.

### 1. Decisions of other courts on "after after-acquired evidence"

Precious few courts have considered the effect of "after after-acquired" evidence, that is, evidence of *post-employment* misconduct discovered in the course of preparing a discrimination case for trial. In *Sigmon v. Parker Chapin Flattau & Klimpl,* 901 F.Supp. 667 (S.D.N.Y.1995), the United States District Court for the Southern District of New York was confronted with evidence of misconduct by an employee that occurred after the employee's termination. The plaintiff had been an associate with a law firm, but alleged that she was discriminated against, and ultimately fired, because she was a woman, became pregnant, and had a child. *Sigmon,* 901 F.Supp. at 667. After her termination, the plaintiff, like other terminated employees, was given an office and telephone by the firm with which to conduct a job search. *Id.* at 674. While in her assigned office, plaintiff came across a file with her name on it containing evaluations by senior

employees. *Id.* She copied these materials from her file and similar materials from the files of twenty other associates also in the box, not sealed or marked confidential, where she had found her file. *Id.* The employee returned the original documents to her former employee, stating that she had inadvertently discovered the materials. *Id.* The law firm withdrew her privileges to conduct a job search from their offices and sought to bar her recovery on her discrimination claims on the basis of this post-employment misconduct, because such conduct constituted sufficient grounds for termination. *Id.*

The district court in *Sigmon* found *McKennon* inapposite to the case before it:

> The *McKennon* decision is premised on the employee's misconduct occurring during her employment. Because, in this case, plaintiff's alleged misconduct occurred after her termination, *McKennon* does not govern. Considering that the goal of Title VII is to eliminate discrimination in the workplace, this conclusion is appropriate and necessary. The *McKennon* court took "due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing," *id.,* because of certain rights which employers have with respect to their employees. In the instant situation, defendant and plaintiff were not in an employer-employee relationship at the time of the alleged incident. Therefore any complaint defendant has against plaintiff for her post-employment conduct falls outside of the *McKennon* rule, and outside of Title VII.

*Id.,* at 682–83. The district court then concluded that even if *McKennon* governed the situation before it, which it reiterated that it did not, "liability would still not be limited to a reduced measure of back-pay." *Id.,* at 683. The district court found that provisions of Title VII provided for remedies beyond rein-

(D.D.C.1995) (decided in January of 1995, on the day the *McKennon* decision came down, and noting that the effect of after-acquired evidence of wrongdoing was an issue that "involved novel and unsettled questions of law which the Court grappled with throughout the trial"). Those rare decisions that offer any guidance on the unique issues involved when the after-acquired evidence is of *post-employment* wrongdoing are discussed in the body of this opinion.

statement, frontpay, and backpay, including attorney fees under 42 U.S.C. § 2000e–5(k), and compensatory and punitive damages under the 1991 amendments to Title VII found in the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b). *Id.* Although the court found the plaintiff's judgment in copying the documents was "questionable," it found that defendants had suffered no prejudice as a result, and therefore declined either to dismiss the action or in any way limit damages. *Id.*

Similarly, in *Ryder v. Westinghouse Elec. Corp.*, 879 F.Supp. 534 (W.D.Pa.1995), the district court for the Western District of Pennsylvania noted that it was not clear whether the after-acquired evidence doctrine, as refined by *McKennon*, would have any application in the case before it. *Ryder*, 879 F.Supp. at 537 (denying summary judgment on the ground that after-acquired evidence of misconduct could not bar liability nor preclude all damages under *McKennon* ). The defendant employer asserted that the doctrine was applicable in either of two scenarios: first, in the scenario that the former employee had divulged confidential information to a competitor in his capacity as a consultant to that competitor after he left the defendant's employment; or, second, in the scenario that the former employee removed confidential information in his computer files when he left the defendant's employment. *Id.* The court noted that the defendant employer had cited no authority for the application of the after-acquired evidence rules in either scenario, and opined that the doctrine "would not apply" to either scenario in any event. *Id.*

The *Ryder* court, like the district court in *Sigmon,* found that application of the *McKennon* rules "presupposes that there was an employer-employee relationship at the time the misconduct occurred, *i.e.,* that the employee had not yet been terminated." *Id.* The court reasoned further as follows:

> Moreover, there cannot be misconduct that the employer did not know about prior to making its adverse decision if the misconduct did not even occur until after the adverse decision was made. [The defendant employer] has not pointed to a single decision in which the doctrine was applied to alleged "misconduct" occurring after an employee was terminated, and we believe that the principles enunciated in *Mardell* [, 31 F.3d at 1222,] and *McKennon* preclude us from expanding the doctrine to that extent. *See also Calhoun v. Ball Corp.,* 866 F.Supp. 473, 477 (D.Colo.1994) (doctrine did not apply where plaintiff, upon being terminated, removed more than 5200 company documents from the workplace).

*Ryder,* 879 F.Supp. at 537–38.[6]

### 2. *McKennon's applicability here*

### a. *"After after-acquired evidence" is outside the scope of McKennon*

■ To these voices, I must add my own. I do not find *McKennon* applicable in the circumstances presented here. The evidence here is "after after-acquired" evidence of misconduct, because it does not involve the discovery of misconduct, either on or off the job, that occurred during Carr's employment with the County. The condition uniformly presupposed to exist for the *McKennon* rules

---

**6.** In *Ryder,* however, because the employer asserted that the alleged misconduct had also occurred during the employee's employment with the defendant, the court reopened discovery to allow the parties to determine whether the after-acquired evidence rules would nonetheless be applicable to the case. *Id.* at 538. Although such a course seems to me to be appropriate in the circumstances of that case, it is not so here. This case is poised for trial within a matter of days, but, more importantly, the defendant here concedes that the "misconduct took place after separation from employment." Defendant's Resistance To Plaintiff's Motions In Limine, p. 3, ¶ 13. Furthermore, the evidence of marijuana use with any proximity to Carr's employment is

indeed a single positive UA in 1992. The evidence of marijuana use approximately once a month dates from 1993, and that suggesting use as often as three or four times a month, harped upon by the defendants, comes from medical records for 1994. Thus, the record here fails to suggest misconduct prior to termination, and, indeed, demonstrates that Carr's use of marijuana only began upon the termination of her employment with the County. As such, it could not reasonably suggest a "constructive motive" for her discharge. *See Russell,* 65 F.3d at 1237 (after-acquired evidence of wrongdoing during employment provides "constructive motive" for termination that is purportedly legitimate rather than discriminatory).

to apply, misconduct during employment that did not lead to discharge at the time only because the employer did not know of it, simply does not exist here. *Sigmon,* 901 F.Supp. at 682–83; *Ryder,* 879 F.Supp. at 537–38. Holding that there is such a condition in after-acquired evidence cases is analogous to holding in a "mixed-motive" case that the employer's proper and improper motives must both be present at the time the allegedly discriminatory employment decision was made. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 252, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989) (plurality) ("An employer may not . . . prevail in a mixed-motives case by offering a legitimate and sufficient reason for its decision if that reason did not motivate it *at the time of the decision;*" emphasis added). Similarly, in a single-motive discrimination case, an employer cannot rely on matters not known to it at the time it made its decision as providing a legitimate, non-discriminatory reason for its decision, because such a reason is plainly not the true cause, but merely a pretext for the discriminatory decision. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). After-acquired evidence of wrongdoing provides only a "constructive motive" for a discharge. *Russell,* 65 F.3d at 1237 (after-acquired evidence of wrongdoing during employment provides "constructive motive" for termination). It would be anomalous indeed to find such a "constructive motive" does not have to bear the same temporal relationship to the employment decisions as does a legitimate reason in either a mixed-motive or single-motive case. *See Mardell,* 31 F.3d at 1228–29 (pre-*McKennon* case vacated on the basis of *McKennon* as to damages, but not as to liability determination, holding that after-acquired evidence of employee misconduct is irrelevant to liability on ground that such evidence formed no part of the employer's decision at the time the decision was made).

In any of these cases, single-, mixed-, or constructive-motive, in which wrongdoing has occurred at the time of the adverse employment decision, but that wrongdoing has not been relied upon by the employer in making the adverse decision, and no other legitimate basis is offered, the employer's decision was motivated by a discriminatory motive. *See Russell,* 65 F.3d at 1237 and this court's comment, *supra,* at note 1. Title VII and like anti-discrimination statutes prohibit actions based upon such a discriminatory motive. In an after-acquired evidence case, the employer plainly lacked the legitimate basis for its decision the after-acquired evidence provides at the time the decision was made, because, obviously, the employer did not have knowledge of the legitimating, "constructive" reason at the time it made the employment decision. Equity may require that some effect be given to the employee's wrongdoing during employment, even if it was not known to the employer. However, when the after-acquired evidence involves misconduct that occurred only after employment terminated, that misconduct is even more distant from the employer's decision-making process, because the misconduct is not temporally related to the decision as well as unknown to the employer. Thus, such "after after-acquired evidence" is even less relevant to the defense of a discrimination claim.

Indeed, the after-acquired evidence of misconduct in this case involves misconduct even more distant from the employment situation than that discussed in either *Sigmon* or *Ryder.* In both of those cases, the misconduct asserted involved actions directly to the detriment of the employer or directly involving the employer's records: copying of employee records from the employer's files in *Sigmon,* 901 F.Supp. at 674; and appropriation of confidential information from the employer's files and provision of that information to a competitor in *Ryder,* 879 F.Supp. at 537. In *Sigmon,* the district court observed that the employer might have a complaint against the former employee for her misconduct, but that any such complaint fell outside of Title VII and *McKennon. Sigmon,* 901 F.Supp. at 682. Plainly, the defendant employer in *Ryder* could also mount such a claim against its former employee. *Ryder,* 879 F.Supp. at 537. However, in this case, the County has absolutely no complaint against Carr for any alleged use of marijuana, because that marijuana use simply had nothing to do with and did not occur during her employment and

caused her former employer absolutely no detriment.

■ As the Court was careful to observe in *McKennon*, remedial relief in "after-acquired evidence" cases "must be addressed by the judicial system in the ordinary course of further decisions, for *the factual permutations and the equitable considerations they raise will vary from case to case.*" *McKennon*, — U.S. at —, 115 S.Ct. at 886 (emphasis added). As I have stated above, this case involves a "factual permutation" not contemplated by the after-acquired evidence doctrine as refined by *McKennon*, because it involves evidence of misconduct that occurred only after the employment relationship had ended. County policies governing employment simply cannot properly, by which I mean either legally or equitably, be imposed upon a person after his or her employment has terminated. It would be grossly inequitable to hold Carr to all of the burdens of County policies at a time when she is not receiving any of the benefits of County employment. Thus, *McKennon* does not require the admission in this case of the evidence of post-employment marijuana use.

### b. *McKennon's prerequisite has not been met*

*McKennon* is not applicable here for a second reason. In this case, the court finds that the County simply has not met the one bright line rule established in *McKennon*: it has not, and cannot on the evidence submitted for the court's consideration of this motion *in limine*, establish that Carr's misconduct was sufficiently severe that it would have terminated her for it. *Id.* at — —, 115 S.Ct. at 886–87. The County has attempted to meet this requirement by proffering its policy, which states that "Any employee found guilty of indulgence in a controlled substance without seeking treatment will be discharged." Although the County's policy is evidence of the "type or quantum" that the employer must "adduce to establish

that it would in fact have fired [the employee] upon discovering" such misconduct, *Mardell*, 65 F.3d at 1074 n. 3, the County has proffered no evidence suggesting that the policy is necessarily applicable here. The County asserts that, because Carr "lied" to her doctors about her marijuana use in 1992, "there is little reason to believe she would be truthful with her employer . . . or would seek treatment," and therefore she could and would have been legally terminated under the County's policy had she still been employed.

However, such a view disregards all of the further evidence the County has submitted to substantiate its claims that Carr's marijuana use was more pervasive than a single positive UA would indicate. That further evidence demonstrates that Carr provided her doctors with information about her marijuana use in 1993 and 1994. Although she does not appear to have sought treatment for her marijuana use, that does not demonstrate that the conditions for termination in the County's policy have been met. At the time of her marijuana use, Carr was not compelled by any policy of her employer to seek treatment in order to retain her job. The County cannot meet its burden to show that it would have fired Carr for the alleged misconduct, because the County has produced no evidence that, had Carr continued to be employed by the County, she would not have abided by the County's policy on use of controlled substances. Thus, on the evidence submitted in resistance to the motion *in limine*, the County has failed to establish the prerequisites for invoking *McKennon's* after-acquired evidence rules. *McKennon*, — U.S. at — — —, 115 S.Ct. at 886–87 (in order to invoke the after-acquired evidence rules, the employer "must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."). *McKennon* therefore does not apply to this case.[7]

---

7. Even if *McKennon* could somehow apply to the circumstances here, which, like the court in *Sigmon*, I must reiterate that it does not, *Sigmon*, 901 F.Supp. at 683, the circumstances of this case remove it from the application of *McKennon's* "general rule" on back pay, and instead place it within the Court's "extraordinary equitable circumstances" exception to that rule.

## C. Relevance and Balance Of Probative Value And Unfair Prejudice

The County contends that even if *McKennon* is not applicable, the after-acquired evidence of Carr's post-employment misconduct is still relevant and admissible, because expert testimony regarding future damages will be based on the presumption that Carr would have remained in the employment of the County. The County argues that someone who smoked marijuana three to four times per month could not maintain a successful career in juvenile detention for her entire adult life. Thus, the County argues, Carr's post-employment misconduct is relevant to her future damages, if any. However, as the court just demonstrated above, the evidence proffered by the County does not demonstrate that Carr could not have maintained a successful career in juvenile detention despite her marijuana use. Carr was not subject to any policy forbidding marijuana use at the time such use occurred, she was never arrested or charged with use of a controlled substance, and there is no evidence that she used marijuana during her employment. Thus, there is nothing about the asserted misconduct that undermines Carr's entitlement to future damages in any amount. The evidence of marijuana use is not relevant to the future damages question, *Fed.R.Evid.* 401, and therefore is not admissible. *Fed. R.Evid.* 402.

Even if the use of marijuana while subject to no employment policy forbidding it could somehow be construed to be relevant to issues in this case, the court concludes that it must nonetheless be ruled inadmissible on the ground that the evidence is of limited probative value and is unfairly prejudicial. *Fed.R.Evid.* 403. The misconduct bears at best a very tenuous relationship to Carr's employment with the County, because it occurred only after her employment had ceased, and occurred during a time when she was not subject to any employment policy forbidding the use of marijuana. Thus, the probative value of the evidence is slight. Furthermore, it is unfair to prejudice someone in the eyes of a jury for conduct proscribed by an employment policy when that person was not in fact subject to such a policy at the time the conduct occurred. Whether intended to or not, the effect of admitting the evidence of marijuana use in this case would be to prejudice Carr's case with conduct that bears only the slightest relationship to the principal issue in the case, which is whether *the employer* illegally discriminated against Carr *during her employment.* Therefore, balancing any probative value of the evidence of marijuana use against its potential for unfair prejudice, the court concludes that the evidence is inadmissible on any issue.

## IV. CONCLUSION

The court concludes first that the Supreme Court's recent decision in *McKennon* does not control the issue of the relevance or admissibility of after-acquired evidence of *post-employment* wrongdoing. *McKennon* presupposes that the after-acquired evidence

---

*McKennon,* — U.S. at —, 115 S.Ct. at 886 ("In determining the appropriate [backpay] relief, the court can consider taking into further account extraordinary equitable circumstances that affect the legitimate interests of either party."). Although the County may have a "legitimate interest" in not employing someone who indulges in marijuana use, and who refuses treatment for drug use, Carr also has a legitimate interest in her post-employment conduct not being used to justify discrimination during employment or to cut-off her entitlement to damages for that discrimination between her termination and the time her rights are vindicated in a judgment of discrimination. I say again, County policies governing employment simply cannot properly be imposed upon a person after his or her employment has terminated. Past employment

does not give an employer a right to continue to impose obligations or requirements for a former employee's conduct according to the employer's policies once an employee has terminated employment and is no longer reaping whatever benefits employment may have provided in recompense for following the employer's policies. Even under *McKennon,* then, there are extraordinary equitable circumstances that would require a dramatic departure from the "beginning point in the court's formulation of a remedy [as] calculation of backpay from the date of the unlawful discharge to the date the new information was discovered." *Id.* Here, the date the new information was discovered simply does not provide the proper ending date for the backpay award, because the new information does not justify ending the employer's backpay obligation.

is evidence of misconduct during the existence of an employer-employee relationship. Therefore, this case involves a "factual permutation" beyond the scope of the *McKennon* decision, *i.e.*, "after after-acquired evidence" of wrongdoing. Furthermore, *McKennon* is inapplicable here, because the employer has failed to establish *McKennon's* one bright-line requirement, that the wrongdoing established by the after-acquired evidence is of sufficient severity that the employer would have terminated the employee for it.

In circumstances in which *McKennon* does not apply, keeping in mind that the motion before the court is one to preclude evidence, the court concludes that evidence of Carr's marijuana use is irrelevant to any of the issues in the case. County policies governing employment cannot properly be imposed upon a person after his or her employment has terminated. The evidence is therefore not admissible. Even were this evidence of post-employment marijuana use relevant, its probative value is slight, and its admission here would be unfairly prejudicial. Plaintiff's October 25, 1995, motion *in limine* is therefore granted in its entirety.

**IT IS SO ORDERED.**