

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-20-1995

# Mardell v Harleysville

Precedential or Non-Precedential:

Docket 93-3258

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Mardell v Harleysville" (1995). *1995 Decisions.* Paper 189.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/189

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 93-3258
_____

NANCY MARDELL,

<u>Appellant</u>

v.

HARLEYSVILLE LIFE INSURANCE COMPANY,
a Pennsylvania Corporation

(D.C. Civ. No. 91-01493)

Present: BECKER, NYGAARD, <u>Circuit Judges</u>, and
YOHN, <u>District Judge</u>.[1]

(Filed July 20, 1995)

_____

OPINION OF THE COURT SUR REMAND FROM THE
UNITED STATES SUPREME COURT

_____

PER CURIAM.

This case is before us on remand from the United States
Supreme Court in light of its recent opinion in <u>McKennon v.</u>
<u>Nashville Banner Publishing Co.</u>, 115 S. Ct. 879 (1995).  Our
original opinion, <u>Mardell v. Harleysville Life Insurance Co.</u>, 31
F.3d 1221 (3d Cir. 1994), is almost entirely consistent with
<u>McKennon</u>.[2]  However, it does vary in one important respect:  the

_____

[1]Honorable William H. Yohn, Jr., United States District Judge for
  the Eastern District of Pennsylvania, sitting by designation.
[2]Plaintiff Nancy Mardell brought this Title VII claim alleging
that she was discharged because of her gender and age.  During

2

calculation of back pay.  In Mardell we concluded that, to ensure that the plaintiff was returned to the position she would have been in but for the discrimination, backpay should be awarded for the period from the discharge until judgment unless the employer could "somehow insulate its illegal actions from its discovery of the unfavorable evidence."  Id. at 1238-40.  McKennon, to the contrary, decided that, absent extraordinary circumstances,

<hr>

discovery Harleysville learned that she had misrepresented certain background information on her résumé and job application, and moved for summary judgment on the ground that the company would never have hired her and, in fact, would have fired her had it known of the misrepresentations.  The district court granted defendant's motion based on the "after-acquired evidence," but we reversed, holding that Harleysville could not introduce the evidence "substantively for the purpose of defending against liability."  31 F.2d at 1238.  We also concluded that the after-acquired evidence may be relevant at the remedies stage of the proceedings.  We noted that if the employer could prove that the plaintiff would have been fired had it known about the newly-discovered wrongdoing, equitable relief, such as reinstatement, might be barred if "particularly invasive of the employer's 'traditional management prerogatives.'"  31 F.3d at 1239-40.

McKennon too held that after-acquired evidence would not provide an employer a complete defense to liability on a plaintiff's claim that she was discharged in violation of federal anti-discrimination laws.  The Court reasoned (as had we) that: (1) barring all relief for violations of Title VII or the ADEA would undermine the key objectives of those statutes:  deterrence of illegal discrimination and compensation to plaintiffs injured by such discrimination, 115 S. Ct. at 884-85; and (2) although an "essential element" in determining whether the employer violated federal law is "the employer's motives in ordering the discharge," id. at 885, after-acquired evidence is not relevant to that question since the wrongdoing revealed by the evidence was not discovered until after the discharge, see id. ("The employer could not have been motivated by knowledge it did not have . . . [at the time the plaintiff was discharged].").  The Court also ruled, as had we, that after-acquired evidence may be used to limit the remedies available to a plaintiff where the employer can "first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."  Id. at 886-87.

backpay runs only until the date that the employer discovered the conduct for which it would have fired the employee.  Needless to say, we are bound by McKennon.

Accordingly, while we reaffirm and reinstate our original opinion and judgment in all other respects, we will vacate the portion of the opinion and judgment that deals with backpay.  Inasmuch as our original opinion and judgment reversed the grant of summary judgment and McKennon in essence affirms on this point, the case will be remanded for trial (and such further discovery or pretrial proceedings as the district court shall deem appropriate).[3]  With respect to backpay, the district court should be guided by McKennon.  In particular, if Harleysville proves that it would have terminated the plaintiff's employment for the reason revealed by the after-acquired evidence,[4] see Shattuck v. Kinetic Concepts, Inc., 49 F.3d 1106, 1108-09 (5th Cir. 1995) ("would have fired" standard, rather than "would not have hired" standard, applies to after-acquired evidence of résumé fraud in discriminatory discharge case); see also Wehr v.

---

[3]We decline plaintiff's invitation to tell the district court how to manage the case on remand.  While bifurcation may sometimes be advisable as a vehicle to insure that after    -acquired evidence not be improperly used during the liability phase, in other cases cautionary instructions or stipulations may render it unnecessary.  We do, however, agree with plaintiff that the district court would be well advised to permit further discovery on the résumé fraud issue, on which the defendant of course bears the burden of proof during the remedies phase.

[4]In the absence of a record, we will not opine on plaintiff's contentions as to the type or quantum of evidence (such as a policy or custom) that Harleysville must adduce to establish that it would in fact have fired her upon discovering her résumé fraud, preferring to leave that issue to the district court in the first instance.

<u>Ryans Family Steak House, Inc.</u>, 49 F.3d 1150, 1154 n.5 (6th Cir. 1995), backpay should run from the discharge to the time that the wrongdoing was discovered, although truly exceptional circumstances may be considered in fashioning appropriate relief.[5]

Finally, we recognize that Harleysville maintains that no remand is necessary, since it contends that this court may properly grant summary judgment in its favor.  Relying on <u>United States v. Burke</u>, 504 U.S. 229, 112 S.Ct. 1867 (1992), which held that recoveries for Title VII backpay awards prior to the 1991 Civil Rights Act may not be excluded from gross income as "damages received . . . on account of personal injuries," <u>id.</u> at 242, 112 S. Ct. at 1874 (internal quotation marks omitted), Harleysville suggests that where an employee had engaged in résumé fraud, the resulting "employment contract" is voidable under the doctrine of fraud in the inducement, and therefore that in litigation such as this, the former employee is entitled to <u>no</u>

---

[5]We make no effort at this juncture to adumbrate the contours of the "extraordinary equitable circumstances" doctrine, <u>see</u> <u>McKennon</u>, 115 S. Ct. at 886.  The district court will have to explore that subject, if presented by an appropriate record, on remand.  Concomitantly, we also decline Harleysville's invitation to balance the equities "and address the proper boundaries of the equitable relief" here, or to "use this case to indicate how the differing equities of résumé fraud and on-the-job misconduct affect the remedies available to plaintiffs."  Instead, we simply note that the Supreme Court did not limit the general principles articulated in <u>McKennon</u> to cases involving on-the-job misconduct, instead using the broader term "wrongdoing" as well as listing both types of after-acquired evidence cases (résumé fraud cases and cases of on-the-job misconduct) -- without distinguishing between them -- when it noted the split among the circuits, <u>see</u> <u>McKennon</u>, 115 S. Ct. at 883.  <u>See also</u> <u>infra</u>.

damages whatsoever.  However, the protections of Title VII and the ADEA are grounded not in a plaintiff's "right" to a particular job but in a federal proscription of discrimination in employment, see Mardell, 31 F.3d at 1232-33 & nn.19-20.

One purpose of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination," Albemarle Paper Co. v. Moody, 422 U.S. 405, 418, 95 S. Ct. 2362, 2372 (1975) (emphasis supplied), and as this court explained in its initial opinion in this case, "[a] victim of discrimination suffers a dehumanizing injury as real as, and often of far more severe and lasting harm than, a blow to the jaw," Mardell, 31 F.3d at 1232.  Furthermore, the Supreme Court explained in McKennon that "an absolute rule barring any recovery of back pay [where there is after-acquired evidence of wrongdoing by the employee] would undermine the ADEA's objective of forcing employers to consider and examine their motivations, and of penalizing them for employment decisions that spring from discrimination."  115 S. Ct. at 886.  We therefore reject defendant's Burke argument, which contravenes the letter and the spirit of McKennon, Title VII, and the ADEA, and will remand this case to the district court for further proceedings consistent with the opinion.

6