**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 24-1037

———————

TEAMSTERS LOCAL UNION NO. 355,

Appellant

v.

ENSINGER PENN FIBRE, INC.

———————

Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-21-cv-01563)
District Judge:  Honorable Gregory B. Williams

———————

Submitted under Third Circuit L.A.R. 34.1(a)
on September 10, 2024

Before: CHAGARES, <u>Chief Judge</u>, ROTH and RENDELL, <u>Circuit Judges</u>

(Opinion filed: April 14, 2025)

———————

OPINION[*]

———————

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

ROTH, Circuit Judge

Teamsters Local Union No. 355 appeals the final judgment of the District Court granting summary judgment to Ensinger Penn Fibre, Inc. on the Union's complaint to vacate the remedial portion of an arbitration award. We will affirm.

**I.**

On October 14, 2020, Ensinger terminated Chad Hall, a Union member whom Ensinger had employed as an equipment operator for twenty-nine years, for leaving his workstation without permission for the third time in less than one month. A collective bargaining agreement (CBA) governed the terms and conditions of Hall's employment, and after his termination, he and the Union filed a grievance challenging his termination as lacking "just cause" in violation of Article 12 of the CBA.[1] The Union submitted the grievance to an arbitrator after the parties were unable to resolve the grievance.

Although the arbitrator concluded that Ensinger had terminated Hall's employment without just cause,[2] the arbitrator refused to award reinstatement and

---

[1] Article 12 provides, in pertinent part: "The right to discharge employees shall remain at the sole discretion of the Company, but no discharge shall be made without just cause, such just cause to mean, among other things, those infractions covered in the employee's handbook, which may subject an employee or group of employees to immediate dismissal and/or other forms of discipline. At the time of discharge, an employee shall be given written notice of the reason for his or her termination." App. 022a (Arbitration Award at 5).

[2] The arbitrator found that on October 14, 2020, Hall had left his assigned workstation without permission, but the arbitrator also found that Ensinger had failed to meaningfully consider evidence that he warranted a penalty less severe than termination, such as his "more than 28 years of apparently discipline free employment with [Ensinger]." App. 045a (Arbitration Award at 28).

backpay on the grounds that Ensinger had discovered—after Hall's termination—that Hall had been under the influence of alcohol at work on the date of his termination.[3]  Per Ensinger's employee handbook, an employee who reports to work under the influence of alcohol commits a "major violation" that "warrant[s] immediate dismissal."[4]  Thus, the arbitrator determined that Hall would have been terminated for reporting to work under the influence of alcohol, and that reinstatement would be futile because his conduct was "so serious that it would warrant another discharge if [Hall] were put back to work."[5]

The Union, pursuant to § 301 of the Labor-Management Relations Act (LMRA),[6] subsequently filed a complaint to vacate the remedial portion of the arbitration award. Ensinger filed a timely answer to the complaint, and the parties ultimately filed cross-motions for summary judgment.  On December 18, 2023, the District Court granted Ensinger's motion and denied the Union's motion.  This appeal followed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and LMRA § 301, and we have jurisdiction under 28 U.S.C. § 1291.  Under LMRA § 301, federal courts may entertain "a suit to set aside an arbitration award entered pursuant to a collective bargaining agreement . . . if [the suit] alleges that the award failed to draw its essence

---

[3] The arbitrator found that Hall was under the influence at work on October 14, 2020, based on:  (1) testimony from Ensinger employees that they had smelled alcohol on his breath after his discharge meeting; and (2) Hall's statement that he would "walk it off," when confronted after the meeting about the odor of alcohol and told he needed to get a ride home.  App. 047a (Arbitration Award at 30).

[4] *Id.*

[5] *Id.*

[6] 29 U.S.C. § 185.

3

from the collective bargaining agreement or that the arbitrator exceeded his powers thereunder."[7]  If "a court is satisfied that an arbitrator's award draws its essence from a collective bargaining agreement, it is without jurisdiction to consider the award further."[8]

We exercise plenary review over a district court's decision on cross motions for summary judgment,[9] but "we apply the same standard the district court should have applied in reviewing the arbitration award."[10]  Our review is extraordinarily narrow:  We do not review the merits of the award or correct factual or legal errors.[11]  Instead, given that "the parties to the collective bargaining agreement 'bargained for' a procedure in which an arbitrator would interpret the agreement[,]'"[12] we "must defer to the arbitrator's factual findings."[13]  Even if we are "convinced [the arbitrator] committed serious error," we may not vacate an award except in rare instances.[14]

We must uphold an award as "draw[ing] its essence from a collective bargaining agreement if its interpretation can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties'

---

[7] *Davis v. Ohio Barge Line, Inc.*, 697 F.2d 549, 555 (3d Cir. 1983).
[8] *Brentwood Med. Assocs. v. United Mine Workers of America*, 396 F.3d 237, 241 (3d Cir. 2005).
[9] *Id.* at 240.
[10] *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1291 (3d Cir. 1996).
[11] *See Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001).
[12] *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 280 (3d Cir. 2004) (quoting *Nat'l Ass'n of Letter Carriers v. U.S. Postal Serv.*, 272 F.3d 182, 185 (3d Cir. 2001)).
[13] *Citgo Asphalt Ref. Co. v. Paper, Allied-Industrial, Chemical & Energy Workers International Union Local No. 2-991*, 385 F.3d 809, 816 (3d Cir. 2004).
[14] *Nat'l Ass'n of Letter Carriers*, 272 F.3d at 186 (quoting *E. Associated Coal Corp. v. United Mine Workers*, 531 U.S. 57, 62 (2000)).

intention."[15]  We cannot vacate "an arbitration award if it was based on an arguable interpretation and/or application of the collective bargaining agreement[;]" we may do so only "if there is no support in the record for [the arbitrator's] determination or if [the award] reflects manifest disregard of the agreement, totally unsupported by principles of contract construction."[16]  We cannot vacate an "award 'even if we find the basis for it to be ambiguous or disagree[ ] with [the arbitrator's] conclusions under the law.'"[17]

### III.

The Union argues that the District Court erred in granting summary judgment and that the remedial portion of the arbitration award should be vacated.  We disagree.

The Union first claims the arbitrator imposed his own brand of industrial justice because, in the Union's view, the remedial portion of the award "flowed from a finding that [Ensinger] would have discharged Hall for being under the influence of alcohol on October 12 [*sic*], 2020—a finding entirely unsupported by the record before him."[18]

---

[15] *Brentwood*, 396 F.3d at 241 (emphasis in original).

[16] *Id.* (quoting *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993)).

[17] *Id.* (alterations in original) (quoting *Citgo*, 385 F.3d at 816).

[18] Union Opening Brief at 8.  We presume that the Union's reference to "October 12, 2020" is a scrivener's error and that the Union meant to refer to October 14, 2020, which was Hall's termination date.

However, we find no error in the District Court's determination that the record supported the arbitrator's finding.[19] We therefore reject the Union's first claim.

The Union's second claim is that the arbitrator manifestly disregarded the CBA by finding that after-acquired evidence of Hall's inebriety barred his reinstatement and recovery of backpay.[20] The Union argues Article 12 of the CBA mandated that Ensinger provide "written notice of the reason for [an employee's] termination,"[21] and that because Ensinger did not provide Hall written notice that his discharge was based on him reporting to work under the influence, he could not be terminated on that basis. Because Article 7 of the CBA precluded the arbitrator from "add[ing] to, subtract[ing] from, supplement[ing] or modify[ing] in any way any of the [CBA's] provisions, terms or

---

[19] The arbitrator based his finding on the plain terms of Ensinger's employee handbook, which explicitly states that "[a]n employee *will be subject to immediate dismissal* for . . . [r]eporting to work while under the influence of alcohol[.]" App. 204a (emphasis added). The handbook further states that the company's disciplinary rules "must be adhered to" and that "appropriate action *will be taken* toward those workers who refuse to follow them." App. 204a (emphasis added). Ensinger also represented to the arbitrator "that it would have removed Mr. Hall for being under the influence of alcohol at work in violation of Company policy." App. 47a–48a. The arbitrator's finding was neither "improvident" nor "silly," but even if it were, that still would "not provide a basis for a reviewing court to refuse to enforce the award." *See Garvey*, 532 U.S. at 509 (quoting *United Paperworkers International Union v. Misco*, 484 U.S. 29, 36 (1987)).

[20] The Union also claims the District Court erred in finding that the arbitrator had resolved the factual issue of whether Hall had been under the influence of alcohol at work. We reject this claim, as we agree with the District Court that the arbitrator made this finding. To the extent the Union claims this issue was never submitted for the arbitrator's review, we would defer to the arbitrator's interpretation of the issues submitted for arbitration. *Cf. Matteson v. Ryder Sys. Inc.*, 99 F.3d 108, 113 (3d Cir. 1996) ("[T]he deference that is accorded to an arbitrator's interpretation of the collective bargaining agreement should also be accorded to an arbitrator's interpretation of the issue submitted." (quoting *Mobil Oil Corp. v. Independent Oil Workers Union*, 679 F.2d 299, 302 (3d Cir. 1982))).

[21] App. 022a (Arbitration Award at 5).

6

conditions[,]"[22] the Union contends the arbitrator exceeded his authority under the CBA by finding that the after-acquired evidence provided an adequate, independent basis for Hall's discharge.  We disagree.

Under the arbitrator's reading of the CBA, Article 12's written-notice requirement relates only to whether the employee was terminated for "just cause," not the proper remedy for an employee terminated "without just cause."[23]  Regardless of whether the arbitrator's interpretation reflects the most textually plausible reading of the CBA, the distinction between the grounds for termination and the proper remedy for an unjust termination is dispositive here.[24]  This is because the after-acquired evidence doctrine sounds in equity and concerns only the proper remedy for unjust termination—not whether the termination was unjustified in the first instance.[25]  The doctrine presumes the employee was terminated without just cause (otherwise it would not apply), and asks whether the unjustly terminated employee's later-discovered conduct was so wrongful that, had the employer known about it at the time of discharge, the employee would have been terminated anyway based on that wrongdoing.[26]  For purposes of the after-acquired

---

[22] App. 022a (Arbitration Award at 5).

[23] App. 011a (District Court Memo. Op. at 9).

[24] To the extent the Union claims the arbitrator misconstrued Article 12, we cannot vacate an award based on an arbitrator's interpretive error unless the arbitrator ignored the CBA's plain language.  *See Monongahela Valley Hosp. Inc. v. United Steel Paper & Forestry Rubber Manufacturing Allied Industrial & Service Workers International Union*, 946 F.3d 195, 199–200 (3d Cir. 2019); *see also Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1127 (3d Cir. 1969) ("[W]hether the arbitrators misconstrued a contract is not open to judicial review." (quoting *Bernhardt v. Polygraphic Co. of Am., Inc.*, 350 U.S. 198, 203 n.4 (1955))).  We cannot say the arbitrator did so here.

[25] *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360 (1995).

[26] *See id.*

evidence doctrine, whether Hall received written notice of the reason for his termination, as required by Article 12, is simply irrelevant; all that matters is, as the arbitrator found, Hall's later-discovered conduct would have furnished grounds for Ensinger to terminate his employment. Under this reading of Article 12, the arbitrator did not exceed his authority under the CBA by refusing to award reinstatement and backpay. Thus, because Ensinger obtained the after-acquired evidence on the same date as Hall's unjust discharge,[27] we must uphold the arbitration award.

## IV.

For the above reasons, we will affirm the District Court's order denying the Union's summary judgment motion and granting Ensinger's summary judgment motion.

---

[27] The Supreme Court has rejected "an absolute rule barring any recovery of back pay [where there is after-acquired evidence of wrongdoing by the employee]." *Mardell v. Harleysville Life Ins. Co.*, 65 F.3d 1072, 1074 (3d Cir. 1995) (alteration in original) (quoting *McKennon*, 513 U.S. at 362). "The proper measure of backpay" in such cases generally "should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered." *McKennon*, 513 U.S. at 362. Because Ensinger discovered the after-acquired evidence of Hall's wrongdoing on the same date as his unlawful discharge, the arbitrator did not err in denying Hall a backpay award.